Eugene Killian, Jr. (EK-9972)
KILLIAN & SALISBURY, P.C.
77 Brant Avenue
Suite 115
Clark, NJ   07066
732-827-8600
ekillian@k-s.com

*Of Counsel:*
Barry J. Fleishman, Esq.
DICKSTEIN SHAPIRO MORIN & OSHINSKY, LLP
2101 L Street N.W.
Washington, DC   20037-1526
202-785-9700
fleishmanb@dsmo.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FORMOSA PLASTICS CORPORATION, U.S.A.,<br>           Plaintiff,<br><br>     vs.<br><br>ACE AMERICAN INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY; NEW HAMPSHIRE INSURANCE COMPANY; COMMONWEALTH INSURANCE COMPANY; ARCH SPECIALTY INSURANCE COMPANY; EVEREST REINSURANCE (BERMUDA) LTD.; ALLIED WORLD ASSURANCE COMPANY, LTD.; LLOYD'S SYNDICATE 1414 (UK); LLOYD'S SYNDICATE 1200 (AA-1127200)(UK); LLOYD'S SYNDICATE 33 (UK); LLOYD'S SYNDICATE 1221 (UK); LLOYD'S SYNDICATE 282 (UK); LLOYD'S SYNDICATE 2003 (UK); and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br><br>           Defendants. | Docket No.:<br><br>*Civil Action*<br><br>COMPLAINT AND JURY DEMAND |

Complaint and Jury Demand - 1

Plaintiff, Formosa Plastics Corporation, U.S.A. ("Formosa"), a Delaware corporation with its principal place of business at 9 Peach Tree Hill Road, Livingston, New Jersey 07039, for its Complaint against Defendants, says:

## NATURE OF THE ACTION

1. This is a case in which Formosa, the policyholder under all risk property insurance policies sold by Defendants to Formosa in New Jersey, seeks a ruling that Defendants are required to provide insurance coverage for damage and loss suffered at Formosa's Illiopolis, Illinois plant as a result of an explosion and fire that took place on April 23, 2004 (the "Explosion").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §§1332 (a)(1) and (3), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States, and between citizens of a State and citizens of a foreign state.

3. Venue is proper under 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to the claim (such as sale of the relevant insurance policies and transmission of relevant insurance claims correspondence) took place here.

## THE PARTIES

4. Formosa is a full-service manufacturer and supplier of plastic resins and petrochemicals. Formosa employs over 300 New Jersey residents at its 225,000 square-foot Essex County headquarters, including corporate officers responsible for risk management and insurance issues.

5. Defendant Ace American Insurance Co. ("Ace") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

6. Defendant Zurich American Insurance Co. ("Zurich") is a New York corporation, with its principal place of business in Schaumburg, Illinois.

7. Defendant New Hampshire Insurance Company ("New Hampshire") is a Pennsylvania corporation with its principal place of business in New York, New York.

8. Defendant Commonwealth Insurance Co. ("Commonwealth") is a corporation organized under the laws of Canada with its principal place of business in Vancouver, British Columbia, Canada.

9. Defendant Arch Specialty Insurance Co. ("Arch") is a Wisconsin corporation with its principal place of business in New York, New York.

10. Defendant Everest Reinsurance (Bermuda) Ltd. ("Everest") is a corporation organized under the laws of Bermuda with its principal place of business in Hamilton, Bermuda.

11. Defendant Allied World Assurance Company, Ltd. ("AWAC") is a corporation organized under the laws of Bermuda with its principal place of business in Hamilton, Bermuda.

12. Defendant Lloyd's Syndicate 1414 (UK) ("Lloyd's 1414") is organized under the laws of the United Kingdom, with its principal place of business in London, United Kingdom.

13. Defendant Lloyd's Syndicate 1200 (AA-1127200) (UK) ("Lloyd's 1200") is organized under the laws of the United Kingdom, with its principal place of business in London, United Kingdom.

14. Defendant Lloyd's Syndicate 33 (UK) ("Lloyd's 33") is organized under the laws of the United Kingdom, with its principal place of business in London, United Kingdom.

15. Defendant Lloyd's Syndicate 1221 (UK) ("Lloyd's 1221") is organized under the laws of the United Kingdom, with its principal place of business in London, United Kingdom.

16. Defendant Lloyd's Syndicate 282 (UK) ("Lloyd's 282") is organized under the laws of the United Kingdom, with its principal place of business in London, United Kingdom.

17. Defendant Lloyd's Syndicate 2003 (UK) ("Lloyd's 2003") is organized under the laws of the United Kingdom, with its

principal place of business in London, United Kingdom. Defendant, Certain Underwriters at Lloyd's, London, has its principal place of business in London, United Kingdom.

18. Defendants will hereinafter be collectively referred to as "Defendants" or "Insurance Companies" with all such terminology intended to have the same meaning for purposes of this Complaint.

## FORMOSA'S PROPERTY INSURANCE PROGRAM

19. Formosa purchased all risk property insurance with a policy period of June 14, 2003 through June 14, 2004, and with a limit of $350,000,000 per loss and a $5,000,000 deductible per loss.

20. Several Insurance Companies agreed to underwrite the all-risk coverage, each assuming a percentage share of the risk. The Insurance Companies and their percentage shares of the policy limits are as follows:

| Insurance Company | Policy Number | Limit of Liability |
|---|---|---|
| ACE | ERPNO 0858924 | 12% of $350 million |
| Zurich | PCA 3500685 | 15% of $350 million |
| New Hampshire | LU 0332706 | 10% of $350 million |
| Commonwealth | OGP 2836 | 7.5% of $350 million |
| Lloyd's 33 (57.692%); Lloyd's 1221 (70% of 23.077%); Lloyd's 282 (30% of 23.077%); Lloyd's 2003 (19.231%) | LUO 332575 | 10.16% of $350 million |
| Arch | 12HHP1564800 | 3.5% of $350 million |

| Everest | DP 227178B | 2% of $350 million |
| --- | --- | --- |
| AWAC | P002140/001 | 7.5% of $200MM |
| Lloyd's 1414 | LU0332836 | 3% of $100 million |
| Lloyd's 1200 | LU0332766 | 3% of $250 million, excess $100 million |

21. While each of the Insurance Companies sold its own policy reflecting its coverage obligations, the policy sold by Zurich to Formosa in New Jersey ("Policy") is reflective of such coverage.

22. The Policy provides all-risk property insurance coverage as follows:

> This policy insures against all risks of direct physical loss or damage to covered property described herein, including general average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

23. The Policy contains the following language:

> 13. Valuation
> Adjustment of the physical damage loss amount under this Policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the Insured, subject to the following:
>
> I.  On all other property, the loss amount will not exceed the lesser of the following:
>
>     (1) The cost to repair;

      (2) The cost to rebuild or replace on the same site with new materials of like size, kind and quality;

      (3) The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss;

. . .

      (8) The actual cash value if such property is :

          a) Useless to the insured; or

          b) Not repaired, replaced or rebuilt on the same or another site within two years from the date of loss.

24. Endorsement No. 9 to the Policy contains a service of suit clause by which each Insurance Company agreed "at the request of the Insured (or Reinsured)," to "submit to the jurisdiction of a Court of competent jurisdiction within the United States."

25. The service of suit clause also provides as follows: "Further, it is agreed that the Insured shall have the right to elect the law governing any dispute arising out of this contract of insurance."

26. Formosa's Illiopolis, Illinois facility is an insured location under the policies sold by the Insurance Companies.

### ZURICH'S LOSS PREVENTION ANALYSIS

27. For the term of the Policy preceding the Explosion, Zurich provided loss prevention services to Formosa on behalf of the Insurance Companies.

Complaint and Jury Demand - 7

28. Zurich prepared risk engineering assessment reports for the Illiopolis facility following inspections and assessment of the facility by Zurich.

29. One purpose of Zurich's loss prevention survey of the Illiopolis facility was to assess the plant for property damage insurance purposes.

30. Zurich's December 2, 2003 Risk Engineering Assessment Report includes an estimated maximum loss scenario and probable maximum loss scenario as part of the assessment's Loss Potential.

31. Zurich's estimated maximum loss scenario contained in the December 2, 2003 Risk Engineering Assessment Report provides in part:

Estimated Maximum Loss Scenario

Vapor Cloud Explosion

The [Estimated Maximum Loss] scenario is based upon a piping failure or a pump seal failure downstream of the VCM paste scale tank (BE-3325) on the first floor of the main process building PVC1. With no means of remote isolation of this vessel, 21,000 lb of VCM is assumed to discharge unhindered. The resulting vapor cloud is assumed to find an ignition source and explode, thus damaging this building and all process equipment inside.

\* \* \*

Probable Maximum Loss Scenario
Since no protection is effective again vapor cloud explosion, the Probable Maximum Loss is equal to the Estimated Maximum Loss.

## THE EXPLOSION

32. The Illiopolis facility occupies approximately 100 acres of flat ground in central Illinois.

33. Formosa purchased the Illiopolis facility in August 2001.

34. During Formosa's ownership and operation of the plant, upgrades and expansions were made with the express or implied knowledge and consent of, coordination with, and/or notification to the Insurance Companies. At all times material, the Insurance Companies had the right and the opportunity to visit and to inspect the premises to ascertain the nature and extent of Formosa's operations, risk factors attending it, and to observe existing, and recommend or require additional safety and risk management practices.

35. On April 23, 2004, a fortuitous and catastrophic event occurred at Formosa's Illiopolis, Illinois facility.

36. An explosion and resulting fire took place on April 23, 2004 in the vicinity of the PVC-1 plant at the facility. There occurred an unhindered discharge of approximately 15,000 pounds of substances from a reactor, which became exposed to a source of ignition, causing a chain reaction of explosions and fire. Five Formosa employees were killed, and much of the facility was destroyed as a result of the explosion and fire.

## FORMOSA'S NOTICE TO THE INSURANCE COMPANIES
## AND CRAWFORD'S ADJUSTMENT

37. Formosa immediately notified the Insurance Companies of the Explosion. The Insurance Companies dispatched their assigned adjuster, Crawford THK ("Crawford") to investigate and adjust the loss, and to provide a coverage position to Formosa's management in New Jersey.

38. Over the ensuing weeks and months, Formosa provided Crawford with unhindered access to the facility (subject only to safety restrictions), permitted and facilitated inspection of the insured property and furnished requested documentation.[aer1]

39. By letter dated March 1, 2005, Crawford stated, "We have concluded our investigation of coverage issues on behalf of the First-Party Market and are pleased to advise you that the first-party insurers have confirmed that the explosion of April 23, 2004 constitutes a covered loss under Formosa's first-party insurance."

40. By letter dated November 3, 2005, Crawford stated, "We have discussed this language with the entire market (including XL and Endurance) and must advise that the first-Party Insurers have reiterated their conclusion that unless the Formosa plant or a facility that performs the operations that had been taking place at the Illiopolis facility is 'repaired, replaced, or

date of loss,' Formosa's losses will be adjusted on an actual cash value basis."

41. In that same letter, Crawford stated "the Market['s]" arbitrary and extra-contractual position that the following standards would demonstrate to "the Market" that Formosa "establish[ed] that the plant ha[d] been 'repaired, replaced, or rebuilt'" within two years:

Construction permits obtained;

Construction contract(s) signed;

Engineering/architectural plans completed; and

Capital funds committed to project.

42. Formosa, through HRH, provided information responsive to the Insurance Companies' requests by letter dated February 6, 2006, and in that same letter, HRH on behalf of Formosa demanded that the Insurance Companies release a sum of $66,881,407 that was being "held back" by the Insurance Companies.

43. By letter dated February 21, 2006, Crawford stated that the material produced by Formosa did "not provide the Market Members with sufficient support to proceed with an adjustment" of Formosa's loss "on a replacement cost basis." Crawford additionally stated, on behalf of the Insurance Companies, that "regardless of Formosa's compliance or non-compliance with these four criteria, Formosa would still have to actually incur those expenses before replacement cost coverage

could be considered." The Insurance Companies refused to make any further payment on Formosa's loss at that time.

44. By letter dated March 15, 2006, Crawford reiterated its arbitrary and extra-contractual position that "in order for there to be an adjustment on a Replacement Cost basis, the facility would have to be rebuilt within two years."

45. In that same letter, however, Crawford stated that the Market Members "recognized the exigencies of the situation when they agreed to review the information you submitted before making a final decision on the valuation" basis. Crawford then stated that Formosa's "claim will be assessed at the replacement cost value of the Illiopolis facility," but added additional, new arbitrary and extra-contractual conditions.

## COUNT I

### (Against All Defendants For Breach Of Contract)

46. Formosa repeats the allegations contained in the preceding paragraphs of this Complaint.

47. The Insurance Companies' policies provide all risk insurance for insured property.

48. The Insurance Companies' policies cover the Explosion.

49. No exclusion contained in the Insurance Companies' policies pertains or applies to the Explosion.

50. Formosa has suffered a covered loss in excess of the deductibles contained in the Insurance Companies' policies with respect to the Explosion.

51. Formosa has satisfied all conditions precedent to recovery under the policies, or, by their action and failure to act, the Insurance Companies have waived compliance with all such conditions.

52. The Insurance Companies have refused to indemnify, or to acknowledge a duty to indemnify, Formosa for the replacement cost of the Illiopolis facility.

53. The Insurance Companies' failure to indemnify Formosa for the replacement cost of the Illiopolis facility constitutes a breach of the policies.

54. Formosa has been damaged by the Insurance Companies' breach.

WHEREFORE, Plaintiff requests the entry of Judgment against all of the Insurance Companies on Count I as follows:

A.   awarding compensatory damages, plus interest, costs of suit, and reasonable attorneys' fees to the extent permitted by law or contract;

B.   awarding such other and further relief as is just and proper.

## COUNT II

### (For Declaratory Judgment Against All Defendants)

55. Formosa repeats the allegations contained in the preceding paragraphs of this Complaint.

56. There presently exists an actual controversy with respect to whether the policies provide replacement cost coverage for the Explosion.

57. The policies require the Insurance Companies to indemnify Formosa on the basis of replacement costs with respect to the Explosion up to the limits of liability of the policies, subject to the applicable deductible(s).

58. Crawford's March 1, 2005 acknowledgement, on behalf of the Insurance Companies, that "the first-party insurers have confirmed that the explosion of April 23, 2004 constitutes a covered loss under Formosa's first-party insurance," constitutes an admission of coverage under the policies.

59. The Insurance Companies' arbitrary and extra-contractual attachment of conditions to replacement cost coverage for the Illiopolis facility loss is not supported by the language of the policies sold by the Insurance Companies.

WHEREFORE, Formosa requests the entry of judgment against all Defendants on Count II as follows:

A. declaring and adjudging that (i) the Explosion is covered under the policies; (ii) the Insurance Companies are

bound by their admission of coverage; and (iii) coverage must be provided on a replacement cost basis; and

    B.    awarding such other and further relief as is just and proper.

Dated: April 17, 2006            KILLIAN & SALISBURY, P.C.
                                     Attorneys for Plaintiff

                                     By: _____
                                             EUGENE KILLIAN, JR.

## DEMAND FOR JURY TRIAL

Formosa demands trial by jury with respect to all issues in this action so triable as of right.

Dated: April 17, 2006            KILLIAN & SALISBURY, P.C.
                                     Attorneys for Plaintiff

                                     By: _____
                                           EUGENE KILLIAN, JR.

## LOCAL RULE 11.2 CERTIFICATION

EUGENE KILLIAN, JR. certifies as follows:

I am a member of the firm of Killian & Salisbury, P.C., the attorneys for Formosa in this action. To the best of my knowledge, the matter in controversy is not the subject of any other action pending in any Court or of any pending arbitration or administrative proceeding.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 17, 2006.

                                           _____
                                           EUGENE KILLIAN, JR.